William E. SHEEHAN, by his father, Henry Sheehan, as next friend, Individually on behalf of himself and on behalf of a class of persons similarly situated but too numerous and too transitory to mention, Plaintiffs-Appellants,

v.

William J. SCOTT, Attorney General of Illinois, et al., Defendants-Appellees.

No. 74–1281.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1975.

Decided July 22, 1975.

John D. Shullenberger, Joan D. Levin, Chicago, Ill., for plaintiffs-appellants.

William J. Scott, Atty. Gen., Robert G. Epsteen, Asst. Atty. Gen., Chicago, Ill., Bernard Carey, State's Atty., Fredric B. Weinstein, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

Before CLARK, Associate Justice (Retired),* and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the dismissal of plaintiff's complaint. The underlying basis of the appeal centers on the refusal of the district court to convene a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284. The plaintiff's complaint purported to be on behalf of himself and all children of school age, subject to the compulsory school attendance sections of the Illinois School Code, Ill. Rev.Stat., Ch. 122, § 26–1 *et seq.,* attending public school within Cook County but outside the City of Chicago, and subject to prosecution as Minors in need of Supervision under Illinois Juvenile Court Act, Ill.Rev.Stat., Ch. 37, § 702–3(b).[1] The complaint sought an injunction against the enforcement of § 702–3(b) on its face and as applied because it "not

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

1. Section 702–1 provides that proceedings may be instituted under the provisions of the Act concerning boys and girls who are delinquent,

only sanctions, invites, and requires unlawful invasions of [plaintiff's] right to privacy but also is cast in terms so vague, overbroad and devoid of standard as to force him to speculate as to its meaning and to be unable to determine how to conform his conduct to the requirements of such law." The complaint further alleged that plaintiff was threatened with prosecution under § 702–3(b) for being absent from school fourteen days during September and October of 1973.[2] The threatened petition was not filed but plaintiff was required to meet with a Juvenile Court Probation Officer who inquired extensively into his family life and personal makeup. The complaint then discussed the full panoply of actions that could be taken if he did not cooperate with juvenile court authorities and were found to be a minor in need of supervision. The key words in § 702–3(b), which trigger the statute's operation, and which are alleged to be unconstitutionally vague and overbroad are: "habitually truant."

Although the complaint in its prayer seeks declaratory relief that § 702–3(b) is constitutionally void and injunctive relief enjoining giving force to that subsection, the thrust of the complaint appears to be directed at the steps taken by the school and allied authorities to ameliorate plaintiff's school attendance

problem by getting to the cause of the difficulty rather than by resorting in the first instance to the court proceedings provided for in the Act.

 Defendants moved to dismiss the complaint, and the district court granted that motion both abstaining and finding that the plaintiff failed to present a substantial constitutional question. We need not consider the propriety of the district court abstaining because we hold that dismissal was proper on the grounds that the complaint does not state a substantial constitutional question in challenging § 702–3(b).[3]

In *Holiday Magic, Inc. v. Warren,* 497 F.2d 687 (7th Cir. 1974), quoting from *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), this court held:

"[w]hen an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." 497 F.2d at 691.

The dissent in *Holiday Magic,* did not dispute this standard but merely its ap-

otherwise in need of supervision, neglected or dependent, as defined in §§ 702–2 through 702–5.

Minors otherwise in need of supervision are defined in § 702–3, the pertinent portion of which reads as follows: "(b) any minor subject to compulsory school attendance who is habitually truant from school."

The complaint concedes that plaintiff is subject to compulsory school attendance.

2. The complaint does not negate that the plaintiff was absent from school on September 5, 10, 11, 12, 13, 17, 18, 20, 21, 27, and 28. The complaint does not reflect which days were school days during the month of September, however, if we assume, as appears reasonable, that Labor Day, Saturdays, and Sundays were not school days, there were nineteen school days during the month of which plaintiff was absent eleven. Understandably there does not seem to be an argument that this would not constitute "habitual truancy," however that term might be defined.

3. We confine ourselves, as apparently did the district court, to the ultimate issue raised, *i. e.,* whether there was a substantial constitutional question presented by § 702–3(b), either on its face or as applied. From either point of view we have to go no further than to determine whether there is any fair or reasonable basis for saying that the triggering phrase "habitual truancy" is either overbroad or vague from a constitutionally offensive point of view. Once that determination is made against the plaintiff, we are not concerned in our appellate review with whether the actions taken by the authorities to correct or ameliorate the problems of one habitually absent from school in the local area of Cook County outside of Chicago are steps in administering the Act in some sense not contemplated by the Illinois General Assembly. *Cf., Ex Parte Bransford,* 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940).

plication to those facts. When it appears that no substantial constitutional question is raised, the district judge should dismiss the action for want of jurisdiction unless some other ground for jurisdiction appears. *Holiday Magic, supra*; 1 Barron and Holtzoff § 52 at 282 (1961 rules ed.)

We need not tarry long on the overbreadth issue. As stated by this court in *United States v. Dellinger*, 472 F.2d 340, 357 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973):

"The doctrine of overbreadth applies when a statute lends itself to a substantial number of impermissible applications, such that it is capable of deterring protected conduct, when the area affected by the challenged law substantially involves first amendment interests, and when there is not a valid construction which avoids abridgment of first amendment interests." (Footnotes omitted.)

There is no indication that plaintiff was attempting to express anything of a protected nature in absenting himself from school. This did not purport to be the black armband or similar type of case. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). We discern no basis for a claim of overbreadth here.

We also find the claim of plaintiff that the statutory subsection under consideration is constitutionally deficient because of vagueness to be equally lacking in any basis for terming it as presenting a substantial constitutional question.

■ The state has a right to compel school attendance. Plaintiff argues that this right is sharply limited citing *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). In *Meyer* the Court held a statute forbidding teaching of languages other than English interfered with the liberty granted to *teachers* of such lan-

guages by the Fourteenth Amendment; nevertheless, the Court stated: "[t]he power of the State to compel attendance at some school and to make reasonable regulations for all schools . . . is not questioned." 262 U.S. at 402, 43 S.Ct. at 628. In *Pierce* the Court held a state statute void which required parents to send their children only to public schools. The Court did not question the state's power to compel school attendance generally. Finally, in *Yoder* the Court prefaced its discussion by stating that there is no doubt as to the power of a state to impose reasonable regulations for the control and duration of basic education but then went on to hold that the Old Order Amish could not be required to send their children to school beyond the eighth grade due to overriding principles of religious freedom. Such countervailing principles are not alleged in this case.

In *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), the Supreme Court stated applicable principles for determining whether a statute is void for vagueness:

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. [footnote omitted]

"On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise. [citations omitted] And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction." *Id.* at 617–18, 74 S.Ct. at 812.

*Harriss* was recently followed by this court in *Paulos v. Breier,* 507 F.2d 1383 (7th Cir. 1974).

Words in statutes must be given their common ordinary meanings. *Banks v. Chicago Grain Trimmers Association,* 390 U.S. 459, 465, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); *Malat v. Riddell,* 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). Webster's Third New International Dictionary (1966) defines truant, in pertinent part, as follows: "absent from school without permission." The parties in essence agree on this definition although plaintiff argues that the definition is not sufficiently definite because it does not indicate whose permission is required for absence to be other than truant. This degree of ambiguity is not sufficient to characterize the statute as unconstitutionally vague on its face. There is a complete lack of any basis in the allegations of the complaint to indicate that the school systems of Cook County outside of the City of Chicago have posed any problems with regard to what constitutes an excuse for absenteeism thereby removing the situation from that of truancy.

Plaintiff's argument that "habitual" is unconstitutionally vague similarly lacks substance. Statutory draftsmen often use the word "habitual" and the courts have construed it, without apparent difficulty, as sufficiently definite to pass constitutional muster. For example, in *Garrett v. Garrett,* 252 Ill. 318, 96 N.E. 882 (1911), the Illinois Supreme Court defined habitual drunkenness under the Illinois divorce law. In *People ex rel. Elliott v. Industrial Motor Freight System,* 17 Ill.App.2d 547, 150 N.E.2d 879 (1958), the Illinois Appellate Court stated that under Illinois law habitual has a well defined meaning. "It means constant, customary, accustomed, usual, common, ordinary or done so often and

repeatedly as to form a habit." 17 Ill. App.2d at 550, 150 N.E.2d at 881. Plaintiff attempts to draw support from the fact that the court held that the trucker involved had not violated the Illinois habitual overweight statute because his conduct was not habitual—he had been overweight on 104 out of 17,799 trips. If plaintiff had only been truant a similar percentage of the time (approximately one day per year), and he were prosecuted under the statute, he would have a better case; but plaintiff had been absent allegedly, much more often.[4]

We have directed our attention heretofore to the question of the existence of a substantial constitutional question insofar as facial validity of § 702–3(b) is concerned. The three-judge court, of course, may also be required where the state statute as applied to the plaintiff violates the federal Constitution. *Query v. United States,* 316 U.S. 486, 490, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942). In the present case, however, there is no allegation that the determination of "habitual truant" status by way of application to plaintiff or anyone else is other than on the basis of the plain meaning of the words themselves.

As we have previously indicated in this opinion, the argument of plaintiff as to the invasion of his privacy, to which much of the briefing and oral argument pertained, is aside from the issue vehicle chosen by the plaintiff, *i. e.,* whether there was a substantial constitutional basis for challenging § 702–3(b). The plaintiff does not contend that compulsory attendance at school is an impermissible invasion of his right of privacy. That claim relates only to the time after he became entitled to be considered an habitual truant.

Plaintiff complains that he "and his family are unaware of what actions they must take or refrain from taking in

4. Although *obiter dicta* in the case, the following quotation from *In the Matter of A. v. City of New York,* 31 N.Y.2d 83, 335 N.Y.S.2d 33, 35, 286 N.E.2d 432, 434 (1972), indicates judicial thinking of the insubstantiality of the vagueness claim here: "We find these argu-

ments less than persuasive. The terms, 'habitual truant,' 'incorrigible,' 'ungovernable,' 'habitually disobedient and beyond * * * lawful control', as well as the sort of conduct proscribed, are easily understood."

order to comply with the law, to prevent its enforcement by defendants and to foreclose further invasions of their right to privacy." The simple answer is to comply with the law which requires compulsory attendance at school by going to school. Sporadic or occasional absence even though violative of the compulsory requirement of the law does not activate action under the state statute here challenged. That is only triggered by habitual truancy. Plaintiff apparently is complaining that he is uncertain how many times he can violate the compulsory attendance requirement before effective action will be initiated against him. We decline to interfere with the reasonable judgmental discretion to be exercised by school authorities in defining exactly where the thin ice ends.

In sum, we hold that the complaint filed in this case fails to "at least formally allege[s] a basis for equitable relief," *Idlewild Bon Voyage Liquor Corp., supra,* 370 U.S. at 715, 82 S.Ct. at 1296, and the constitutional question it purported to raise is insubstantial. Accordingly, the judgment is affirmed.

Affirmed.