287 N.W.2d 462 (1980)
In the Interest of E. B., A Child.
Larry E. STERN, Petitioner and Appellee,
v.
C. B. and E. B., Respondents, and
E. B., a minor, Respondent and Appellant.
Civ. No. 9649.
Supreme Court of North Dakota.
January 10, 1980.
*463 Cynthia A. Rothe, Cass County, State's Atty., Fargo, for petitioner and appellee; argued by Robert G. Hoy, Asst. State's Atty.
Cooke & Plambeck, Fargo, for respondent and appellant; argued by Dan D. Plambeck, Fargo.
PEDERSON, Justice.
E. B., a juvenile, appeals from a decision of the juvenile court entered May 16, 1979, finding him to be an unruly child in that he was "habitually and without justification truant from school" in violation of § 27-20-02(4)(a), NDCC. We find that § 27-20-02(4)(a) is not unconstitutionally vague, and affirm the holding that E. B. is an unruly child.
Section 27-20-02 is part of the Uniform Juvenile Court Act, which provides that the supreme court shall hear appeals upon the files, records, and transcript of the evidence of the juvenile court. Section 27-20-56. This scope of review is similar to the former procedure of trial de novo. In Interest of D. S., 263 N.W.2d 114 (N.D. 1978). Although appreciable weight is given to the juvenile court's findings of fact, this court is not bound by the "clearly erroneous" rule found in the North Dakota Rules of Civil Procedure, § 52(a). McGurren v. S. T., 241 N.W.2d 690 (N.D.1976).
E. B. is fifteen years old and lives with his mother. He was involved in an informal adjustment before a juvenile supervisor in May of 1978, at which time he admitted committing the unruly act of truancy during the 1977-78 school year, and was placed on probation.
The problem reoccurred the following year and on January 30, 1979, a petition was filed alleging that E. B. was an unruly child in that he was habitually truant from school. He missed a total of eighteen days of school, six and one-half of which were unexcused, between September 5, 1978, and January 30, 1979.
E. B.'s attorney moved to dismiss the petition on the ground that § 27-20-02(4)(a) was unconstitutionally vague. The juvenile supervisor denied the motion and found that E. B. was an unruly child. The district court confirmed the supervisor's finding.
As grounds for reversal, E. B. contends that the terms "habitually" and "without justification" are too vague for the fair administration of justice; secondly, that the State must prove that the child's absences from school were willful and that there was no justification for them; and, lastly, that six and one-half days of unexcused absences do not constitute habitual truancy.
Section 27-20-02(4) provides as follows:
"4. `Unruly child' means a child who:
a. Is habitually and without justification truant from school;
b. . . .
c. . . .
d. In any of the foregoing is in need of treatment or rehabilitation."
E. B. asserts that the terms "habitually" and "without justification" do not provide adequate standards for the juvenile court in applying the statute so that § 27-20-02(4)(a) violates the due process clause of the Fourteenth Amendment to the United States Constitution and Section 13 of the North Dakota Constitution. It is admitted that this is a minority position and that a number of courts have ruled that those words are not unconstitutionally vague.
In United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), the Supreme Court set forth applicable principles for determining whether a statute is void for vagueness:
"The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. [Footnote omitted.]" Id. at 617, 74 S.Ct. at 812.
This guarantee of due process is applicable to civil statutes as well as criminal. Alsager v. District Court of Polk Cty., Iowa, 406 F.Supp. 10 (S.D.Iowa 1975). In In re J. Z., 190 N.W.2d 27 (N.D.1971), this court considered a vagueness challenge to a portion of the Uniform Juvenile Court Act and stated:

*464 "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. On the other hand, where the words assailed, taken in connection with the context, are commonly understood, their use does not render a statute invalid. . . . (footnotes omitted.)" Id. at 35.
This directive to look to see if the words assailed are commonly understood is also found in § 1-02-02, NDCC, on rules of interpretation of statutes.[1]
We find the argument less than persuasive that the words "habitually" and "without justification" are too vague to provide adequate standards. Statutory draftsmen often use these words and the courts have construed them without apparent difficulty. For example, in State v. Harm, 200 N.W.2d 387 (N.D.1972), this court declined to hold that § 39-06-32(3), NDCC, was invalid on the basis that the words "habitually reckless or negligent driver" were unconstitutionally vague:
"It has been said that the terms `habitual,' `reckless,' and `negligent' are well known to all and the suspending or revoking officials have thereby a definite and tangible standard to guide them in their determination." Id. at 392.
Mere use of general language does not support a vagueness challenge. State v. Woodworth, 234 N.W.2d 243, 245 (N.D.1975).
In A v. City of New York, 31 N.Y.2d 83, 335 N.Y.S.2d 33, 286 N.E.2d 432 (1972), the phrase "habitually truant" was alleged to provide an inadequate standard. The court held that these terms are easily understood and that the danger that the court may make an unduly restrictive application of the statute seemed unrealistic. In In re Napier, 532 P.2d 423 (Okl.1975), the court considered a statute defining a child in need of supervision as one who is "habitually truant" and held it was not void for vagueness. In Sheehan v. Scott, 520 F.2d 825 (7th Cir. 1975), the court held that the words "habitually truant" were not unconstitutionally vague. The plaintiff in that case complained that he was unaware of what actions he must take in order to comply with the law. "The simple answer is to comply with the law which requires compulsory attendance at school by going to school." Id. at 830.
For other cases wherein the court has construed similar terms see In re Alley, 174 Wis. 85, 182 N.W. 360 (1921), "habitually truant"; Commonwealth v. Johnson, 309 Mass. 476, 35 N.E.2d 801 (1941), "habitual school offender"; In re Elmore, 222 A.2d 255 (D.C.1966), "habitually beyond control"; Simmons v. State, 371 N.E.2d 1316 (Ind. 1978), "habitual truant."
It appears that the phrase "habitually truant" has been used in numerous statutes and courts have uniformly upheld them. Although the phrase may lack mathematical precision, it has a common-sense meaning which provides adequate standards for the guidance of the court. Attempting to delineate precisely how many times a child can "skip" school for the sake of exact guidelines would be a futile gesture and may invite students to test its limits. As the Seventh Circuit said in Sheehan v. Scott, supra, we decline to interfere with the reasonable discretion to be exercised by school authorities in defining exactly where the thin ice ends.
We also decline to hold that the words "without justification" are unconstitutionally vague. These words are not ambiguous and have a meaning well understood in common language. These are also terms which have withstood previous vagueness challenges. See Ex parte Strong, 95 Tex. Cr.R. 250, 252 S.W. 767 (Texas 1923); State v. Gardner, 51 N.J. 444, 242 A.2d 1 (1968); State v. Norflett, 67 N.J. 268, 337 A.2d 609 (1975), "without lawful justification."
*465 E. B. asserts that the State must prove that the child's absences were at least "voluntary" and perhaps "willful," and he asserts that oversleeping is not the kind of conduct the statute meant to proscribe. Our state requires each child to attend school every day. Chapter 15-34.1, NDCC. If the child does not attend, and his or her parent did not give permission for the absence  the child's absence is marked unexcused. This is the exact conduct meant to be proscribed, whether the reason for the absence was oversleeping or something else. We are hard-pressed to see how oversleeping is not volitional conduct, unless the fatigue producing the oversleeping is due to illness or other conditions beyond the juvenile's control.
E. B. also maintains that the culpability requirement of "willfulness" must be implied as a part of the offense by analogizing the Uniform Juvenile Court Act to criminal law. The purpose of the Uniform Juvenile Court Act is to improve the child's condition and to remove the taint of criminality. Section 27-20-01, NDCC. It should not be construed as a punitive statute.
The State does not have to prove there was no justification for the absences. The Compulsory School Attendance chapter, 15-34.1, provides several exceptions to compulsory attendance and places the burden of proving them on the parent. See § 15-34.-1-03, NDCC. We see no reason why a child charged with habitual truancy should not have the same burden. See Simmons v. State, supra.
Lastly, E. B. contends that six and one-half days of unexcused absences do not constitute habitual truancy.
We are to consider this matter using a broad review of the files, records, and transcript of the juvenile court. Section 27-20-56, NDCC.
The findings of the juvenile referee and the record below indicate that E. B. admitted committing the act of truancy for the previous school year (1977-78). There is a separate finding of fact that E. B.'s mother had difficulty controlling the child and that he did not submit to her reasonable wishes. The transcript indicates that she had not given E. B. permission to miss school on the days he was marked unexcused. E. B. was absent from school a total of 18 times during the five months in question, not just the six and one-half days marked unexcused. Viewing the total picture, school authorities were able to detect a developing, consistent pattern of truancy in E. B. for the 1978-79 school year. With this conclusion we agree.
The Uniform Juvenile Court Act has separate provisions for the "unruly child" to remove any taint of criminality and to provide for treatment or rehabilitation. School officials should be encouraged to act upon developing patterns of truancy so that the child can be helped and the problem cured.
Having reviewed the evidence anew, we find that § 27-20-02(4)(a) is not unconstitutionally vague and affirm the district court's holding that E. B. was an unruly child in that he was habitually and without justification truant from school.
ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.
NOTES
[1] 1-02-02. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained."